UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CHARMAINE JONES, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Docket no. 2:19-cv-00151-GZS |
| ROBERT PORTER, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Robert Porter's Motion for Summary Judgment on Counts II, III, V & X of Plaintiff's Complaint (ECF No. 22). Having reviewed the record as well as the parties' legal memoranda, the Court GRANTS the Motion for the reasons explained below.

**I.  LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Here, Defendant moves for summary judgment on purely legal grounds, and the Court's analysis does not turn on whether there are any genuine disputes as to material facts, but rather on the validity of Defendant's legal argument as applied to the undisputed factual record. In the section that follows, the Court provides an overview of these facts, gleaned from the parties' filings, which include a joint stipulated record (ECF No. 20, hereinafter, "JSR").

## II. FACTUAL BACKGROUND

Plaintiff Charmaine Jones filed a complaint for divorce from Defendant Robert Porter in August 2018. (JSR, PageID # 109.) Porter answered, seeking divorce on grounds of irreconcilable marital differences. (Id., PageID # 111.) After a hearing, the Maine district court entered judgment granting a divorce and dividing the parties' property. (Id., PageID #s 112-15.) At the hearing, Jones made no claim for injuries sustained as a result of Porter's alleged intentional tortious conduct and/or intentional assault and battery.

The parties' divorce judgment divided their intangible accounts as follows: Each party was awarded all checking, savings, and retirement accounts and other intangible assets then in their names or possession. The judgment provided that if there were any joint accounts, the assets therein would be divided evenly between the parties. (Id., PageID # 113.) The judgment also awarded each party all debts currently in their names. Finally, the judgment ordered Porter to pay Jones's portion of the couple's telephone bill and auto insurance through January 31, 2019. By that date, Jones was to transfer the cable television bill in her name to her own account. On that date, she would also become exclusively responsible for her phone and auto insurance bills. (Id., PageID # 113.)

The divorce judgment awarded Porter exclusive ownership of a residence in Maine, and it awarded Jones exclusive possession of any real estate in South Africa purchased by her before the parties' marriage. (Id., PageID #s 112-13.) Jones was awarded a 2013 Volkswagen Jetta and Porter a 2014 Nissan Sentra. Porter was to sign title to the Volkswagen over to Jones upon receipt from her of the required title documents. (Id., PageID #s 113-14.) The court stated that the parties had otherwise "divided their tangible property in a just and equitable manner" and awarded them all other tangible property currently in their name or possession. (Id., PageID # 113.) The court

ordered Porter to pay Jones $60,000 within 30 days of final judgment "[a]s an equitable distribution of marital property." It did not order any spousal support or attorney's fees. (Id., PageID # 114.)

The divorce judgment contained a paragraph regarding "future claims," which stated:

> This Judgment resolves all claims with respect to the parties' divorce action. The Plaintiff believes that she has claims outside of this divorce action to which she reserves her rights. The Defendant believes that any such claims have been resolved as a result of this Divorce Judgment and Defendant reserves all defenses to any future claims by the Plaintiff.

(Id., PageID # 114.)

Neither party to the divorce action appealed from the court's divorce judgment or sought any form of post-judgment relief from the district court.

### III. DISCUSSION

In the pending eleven-count Complaint (ECF No. 1), Plaintiff alleges that Defendant promised he would marry her and provide her with certain benefits and, in doing so, fraudulently induced her to leave her career and home in South Africa. She further alleges that Defendant mistreated her in various ways, including by committing intentional torts. Defendant has moved for summary judgment on only four of Plaintiff's claims: breach of contract (Count II), breach of implied contract (Count III), negligent infliction of emotional distress ("NIED") (Count V), and breach of fiduciary duty (Count X). Defendant argues that these claims were within the jurisdiction of the divorce court and could have been litigated in the divorce proceeding, so they are barred by the doctrine of res judicata.

Under the doctrine of res judicata, claims are precluded from relitigation "if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." In re M.M., 86 A.3d 622, 627 (Me. 2014). Some jurisdictions,

3

including Maine, have held that this doctrine does not bar claims for interspousal torts after the spouses have divorced. See, e.g., Abbot v. Williams, 888 F.2d 1550, 1554-55 (11th Cir. 1989); Nelson v. Jones, 787 P.2d 1031, 1034 (Alaska 1990); Henriksen v. Cameron, 622 A.2d 1135, 1142 (Me. 1993); Stuart v. Stuart, 421 N.W.2d 505, 508 (Wis. 1988). Such jurisdictions note that raising an "issue in an action for divorce does not make that action the 'same cause of action' as a tort action" because the two legal actions have different purposes—a tort claim aims to "redress a legal wrong in damages" while a divorce action is focused on severing the marital relationship and dividing the marital estate. Henriksen, 622 A.2d at 1141 (quoting Heacock v. Heacock, 520 N.E.2d 151, 153 (Mass. 1988)). Moreover, in a no-fault jurisdiction such as Maine, "[r]equiring a party to raise tort claims in a divorce action would inject a detailed examination of fault into the litigation; a result the legislature clearly did not intend." Id. at 1141. Finally, because the right to a jury trial in tort actions would require bifurcation of an equitable divorce proceeding that included a tort claim, joining such actions to a divorce trial could unduly delay finalization of the divorce. Id.

Defendant concedes that Plaintiff's intentional tort claims are not barred by res judicata. But Defendant contends that Plaintiff's breach of contract, NIED, and breach of fiduciary duty claims could have been heard by the divorce court and are therefore barred by the doctrine. The Court considers this argument first with respect to Plaintiff's breach of contract claims.

**A. Breach of Contract (Count II) & Breach of Implied Contract (Count III)**

The Court agrees with Defendant that contractual claims arising from former spouses' premarital and marital arrangements are well within the jurisdiction of the divorce court, which regularly decides contract claims related to prenuptial agreements. See, e.g., Millay v. McKay, 157 A.3d 218, 220 (Me. 2017) (describing a divorce court judgment that considered the

4

enforceability of a prenuptial agreement); Blanchard v. Blanchard, 148 A.3d 277, 279 (Me. 2016) ("On August 24, 2015, the court held a bifurcated trial on (1) the validity of the premarital agreement and (2) the divorce complaint."); Hoag v. Dick, 799 A.2d 391, 392-93 (Me. 2002) (describing divorce court's ruling that a premarital agreement was invalid and unenforceable). A contract action regarding an agreement allegedly reached by the parties as they contemplated marriage, in contrast to a tort action, does not serve a fundamentally different purpose than the divorce. Indeed, the divorce court's task of severing the marital relationship and effectuating an equitable division of the marital estate *requires* adjudication of such agreements, as they help define the marital estate, may evidence the spouses' contributions thereto, and can indicate how dissolution of the marriage will affect the parties' economic circumstances. These are all factors that courts presiding over divorce proceedings must consider.[1] See 19-A M.R.S.A. §§ 951-A.2.B, .C; 953.1.

Here, despite Plaintiff's efforts to frame her contract claims as torts, it is clear that she is alleging some sort of prenuptial agreement that she could have presented to the divorce court. Count II alleges that Defendant breached a contract between the parties by not performing on the obligations he promised Plaintiff in return for her moving to the United States and marrying him. This alleged agreement was obviously pertinent to the parties' divorce; its resolution would presumably be critical to finalizing their separation and severing their marital relationship. Likewise, Count III, which alleges that Defendant breached an implied contract involving the creation of a prenuptial agreement in anticipation of Plaintiff's move to the United States, was

---

[1] Additionally, contract claims don't inevitably introduce an examination of fault into the divorce proceeding because contract law generally operates on a strict liability system—i.e., if a party breaches, that party pays damages, regardless of the party's reason for breach.

clearly relevant to the divorce proceedings.[2] Plaintiff averred to these legal theories during discovery for the divorce proceeding (see, e.g., JSR, PageID # 195); it was incumbent on her to incorporate their resolution into any settlement agreement ratified by the divorce court and/or put them in issue before that court. The divorce judgment on record does not reserve Plaintiff's contract claims for a later proceeding. Rather, it states the parties' positions as to what future claims remain available. Under these circumstances, the doctrine of res judicata applies, and that doctrine bars relitigation of claims that might have been raised in the divorce proceeding. The Court therefore GRANTS summary judgment on Counts II and III.

### B. Negligent Infliction of Emotional Distress (Count V)

The Court next turns to Plaintiff's claim for NIED, an unintentional tort. As Defendant notes, the Law Court has previously considered the wisdom of permitting post-divorce interspousal claims for emotional distress. It has recognized "the threat of excessive and frivolous litigation intruding into" the lives of parties after divorce since "most divorces involve some level of emotional distress and the likelihood of vindictive post-divorce litigation may be especially high." Henriksen v. Cameron, 622 A.2d 1135, 1139 (Me. 1993). But the Law Court has concluded that "[t]he showing required of a plaintiff in order to recover damages for *intentional* infliction of emotional distress"—i.e., a showing that "conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency'"—"provides a built-in safeguard against excessive and frivolous litigation." Id. (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 46). However, no

---

[2] Plaintiff seems to take the position that, because she did not raise these alleged prenuptial agreements before the divorce court, they may be treated as undecided by the court and the related claims not barred by res judicata (Plaintiff's Resps. To Def.'s Statements of Material Fact (ECF No. 26) PageID ## 241-43). But as the law makes clear, if the claims "might have been[] litigated" in that proceeding, they are claim precluded, whether or not they were considered by the court or accounted for in a settlement agreement between the parties. In re M.M., 86 A.3d 622, 627 (Me. 2014). Plaintiff's argument seems to confuse issue preclusion with claim preclusion. Cf. Arizona v. California, 530 U.S. 392, 414 (2000). But the the Court's ruling rests on a conclusion that the counts are claim precluded, making the question of issue preclusion irrelevant.

such showing is required for a claim of NIED, and in this Court's view, the Law Court would therefore decline to consider Plaintiff's post-divorce interspousal claim for negligently inflicted emotional distress.[3] While former spouses may collect on harms resulting from the intentionally tortious conduct of their ex-spouses, courts cannot be in the business of adjudicating NIED claims that may so easily overlap with the emotional harms resulting from the typical, non-litigable vicissitudes of marriage. Such claims must be understood to be resolved via the divorce proceeding. The Court GRANTS summary judgment on Count V, noting that Plaintiff's remaining claims leave her the opportunity to collect for emotional damages.

**C. Breach of Fiduciary Duty (Count X)**

Finally, the Court addresses Plaintiff's breach of fiduciary duty claim. The intentional torts the Law Court has recognized as not being within the jurisdiction of the divorce court, such as claims for intentional infliction of emotional distress ("IIED"), allege conduct subject to censure regardless of the parties' relationship. Breach of fiduciary duty, however, alleges breach of a duty owed another by virtue of a special relationship. Courts presiding over a divorce are charged by statute to account for breaches of the trust spouses place in one another due to their special marital relationship—they must consider any "economic misconduct" of the divorcing spouses. 19-A M.R.S.A. § 951-A.5.M; see, e.g., Harper v. Harper, 169 A.3d 385, 388 (Me. 2017) (upholding a divorce court's finding of economic misconduct where there was competent evidence that husband unilaterally made business decisions, the legitimate business purpose of which were not established, that had a detrimental impact on the marital estate); Delano v. Delano, 501 A.2d 1287, 1289 (Me. 1985) (suggesting that evidence of unilateral withdrawals by one spouse from a joint

---

[3] Indeed, Henriksen suggests that claims for NIED by one spouse against another are never recoverable in Maine. See 622 A.2d at 1139 (discussing the policy concerns supporting interspousal immunity).

7

bank account to fund payments to a third party would establish economic misconduct). Plaintiff's claim, which alleges that "Defendant engaged in or allowed transactions favorable to Defendant and adverse to Plaintiff in the course of their relationship," describes precisely this sort of breach. (Pl. Compl., PageID # 24.) Asserting that the parties' relationship involved a more extreme level of trust and confidence than suggested by the typical marital relationship, as Plaintiff does by framing her claim as breach of fiduciary duty, does not allow Plaintiff to escape the effects of res judicata.[4] The Court concludes Defendant is entitled to summary judgment on Count X.

## IV. CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Counts II, III, V & X of Plaintiff's Complaint (ECF No. 22).

SO ORDERED.

                                                                           /s/ George Z. Singal
                                                                           United States District Judge

Dated this 10th day of February, 2020.

---

[4] The Court notes that, because breach of fiduciary duty is widely recognized as a claim to be decided in equity, prosecuting it in the divorce court would not require a bifurcated trial. See In re Crowe Rope Indus., LLC, 307 B.R. 1, 5 (D. Me. 2004). Also, had Plaintiff raised the breach of fiduciary duty claim before the divorce court, that court could have assessed the claim and, if it deemed doing so prudent, reserved it for a subsequent proceeding.